**BEFORE THE UNITED STATES JUDICIAL**
**PANEL ON MULTIDISTRICT LITIGATION**


In re NINE WEST LBO          .  MDL No. 2941
SECURITIES LITIGATION.       .  Washington, D.C.
                             .  Thursday, May 28, 2020
. . . . . . . . . . . . . . . .  10:42 a.m.


**TRANSCRIPT OF ORAL ARGUMENT**
**VIA VIDEO TELECONFERENCE**


 BEFORE:              HONORABLE KAREN K. CALDWELL, CHAIR
                      Eastern District of Kentucky

                      HONORABLE ELLEN SEGAL HUVELLE
                      District of Columbia

                      HONORABLE CATHERINE D. PERRY
                      Eastern District of Missouri

                      HONORABLE NATHANIEL M. GORTON
                      District of Massachusetts

                      HONORABLE MATTHEW F. KENNELLY
                      Northern District of Illinois

                      HONORABLE DAVID C. NORTON
                      District of South Carolina

                      HONORABLE R. DAVID PROCTOR
                      Northern District of Alabama




Court Reporter:      Bryan A. Wayne, RPR, CRR
                     U.S. Courthouse, Room 4704-A
                     333 Constitution Avenue NW
                     Washington, DC 20001
                     (202) 354-3186


Proceedings reported by stenotype shorthand.
Transcript produced by computer-aided transcription.

**APPEARANCES:**

For Plaintiffs:                    EDWARD A. FRIEDMAN, ESQ.
                                   Friedman Kaplan Seiler & Adelman
                                   7 Times Square
                                   New York, NY 10036-6516
                                   (212) 833-1100

For Director and                   CLIFF C. GARDNER, ESQ.
Officer Defendants:                Skadden, Arps, Slate, Meagher & Flom
                                   One Rodney Square
                                   920 N. King Street
                                   Wilmington, DE 19801
                                   (302) 651-3000

For Shareholder                    GREGG L. WEINER, ESQ.
Defendants:                        Ropes & Gray LLP
                                   1211 Avenue of the Americas
                                   New York, NY 10036-8704
                                   (212) 596-9000

1                     P R O C E E D I N G S

2           JUDGE CALDWELL:  The Panel will now take up

3    MDL No. 2941, In re Nine West Securities Litigation.

4        We have Mr. Friedman on the line?  Mr. Friedman?

5           MR. FRIEDMAN:  Yes, Your Honor.

6           JUDGE CALDWELL:  Would you please make your appearance

7    for the record.

8           MR. FRIEDMAN:  Thank you, Judge Caldwell.  May it

9    please the Court, I am Edward A. Friedman with the law firm of

10   Friedman Kaplan Seiler & Adelman, counsel for the two Plaintiffs

11   in the actions, Marc S. Kirschner as Trustee of the NWHI

12   Litigation Trust, and Wilmington Savings Fund Society FSB as

13   successor indenture trustee for certain notes of Nine West

14   Holdings, Inc.  The Plaintiffs are requesting centralization

15   of all actions in the District of Massachusetts before the

16   Honorable Nathaniel M. Gorton.

17           JUDGE CALDWELL:  Very well.

18       Judge Gorton, will you be participating in this argument?

19           JUDGE GORTON:  No.  I'm recused on this one.

20           JUDGE CALDWELL:  Very well.

21       Is anyone else recused from this argument?

22   All right.  Very well.  Judge Norton is recused as well.

23   I'll note that for the record.

24       Mr. Friedman, you have three minutes.  You've also reserved

25   a minute for rebuttal.  You may proceed, sir.

1      MR. FRIEDMAN:  Thank you, Your Honor.  There are two

2 issues I would like to discuss today: first, the convenience of

3 parties and witnesses, and second, the reasons why we believe

4 Defendants' request to centralize in the Southern District of

5 New York should be rejected.

6      First, as to convenience of parties and witnesses,

7 more defendants, including Jones Group's former CEO, are in

8 Massachusetts than in any other state.  More damages are claimed

9 against Massachusetts defendants, almost half of the nationwide

10 total, than against defendants in any other state.

11      California, where the Jones Group former presiding director

12 is located, is in second place as to the number of defendants

13 and claimed damages.  Massachusetts and California together

14 account for well over half the defendants and almost three-

15 fourths of the claimed damages in all the actions.

16      For the 58 defendants in Massachusetts, Massachusetts is

17 obviously more convenient than New York.  For the 49 defendants

18 in California, as well as the defendants in Florida, Illinois,

19 and Texas, Massachusetts is at least equally as convenient as

20 New York.  New York, we believe, should not even be in the

21 running.  No defendants are located in New York, and no actions

22 or claims have been filed in New York.

23      The Defendants argue that the Plaintiffs should not

24 count the so-called Canadian Fidelity funds that were sued in

25 Massachusetts, but those funds are part of the Fidelity network

1    headquartered in Boston.  The portfolio manager for the funds

2    was served personally in Fidelity's Boston office where he works.

3        Moreover, the question of whether there is jurisdiction

4    over those funds in Massachusetts is the type of legal issue

5    that we understand is generally not considered by the Panel,

6    and it would be equally convenient for Fidelity, which is

7    represented by Ropes & Gray, to litigate the question of

8    jurisdiction in Boston as in New York.

9        In any event, even if the Fidelity funds are not counted,

10   Massachusetts would still have more defendants than any other

11   state and about the same fraudulent transfer damages as

12   California, far more than any other state, and New York would

13   still have none.

14       I see my time is running out.  I'll say quickly, although

15   defendants argue that Nine West and the Jones Group were

16   headquartered in New York, those defunct entities are not

17   defendants, and their documents from the relevant time period

18   are on backup tapes in Austin.  Most of the former directors

19   are outside of New York.

20       And finally, Your Honor, I'll just say that we're talking

21   about a situation where no cases are pending in New York.  We

22   understand the Panel is extremely reluctant to centralize in a

23   district where there are no cases absent overriding circumstances

24   spelled out in prior decisions, none of which are present here.

25           JUDGE CALDWELL:  Thank you for your argument.  Your

1   time is up.

2        Panel members, do you have any questions for Mr. Friedman?

3   Yes.   Judge Perry.

4        JUDGE PERRY:  So you're the Plaintiff in this case,

5   and the Defendants argue that the reason there are no cases in

6   New York, obviously, is because you didn't file any there and

7   that you did that solely because of the Second Circuit precedents

8   and that you avoided the potential New York defendants as well.

9        And although -- I guess what I'm asking is, if -- well,

10  I'd like to hear your response, and in particular, is there

11  some other reason that you did not sue the New York potential

12  defendants that you haven't sued?

13        MR. FRIEDMAN:  So, Your Honor, we believe the

14  Plaintiffs made a reasonable decision in suing the Defendants

15  they sued and in suing all of those defendants in their home

16  states.  And as far as New York goes and the potential

17  defendants in New York, we do have a situation where the one

18  circuit in the country that has issued a ruling with which we

19  respectfully disagree, on the 546(e) safe harbor, that one

20  circuit is the Second Circuit.

21        We chose not to file any action in New York.  We chose

22  not to sue any New York defendants because we anticipated that

23  defendants would make the argument that the claims should be

24  dismissed by virtue of this recent Second Circuit ruling.

25        I would mention, Your Honor, that the Second Circuit

ruling that recently came down is quite similar in effect to

a 2016 Second Circuit ruling on the 546(e) safe harbor that was

rejected by the United States Supreme Court in a 9-0 decision.

As far as the recent Second Circuit ruling goes, we do not yet

know what other circuits will decide, and we do not yet know

what the U.S. Supreme Court will decide.

In our request for centralization in Massachusetts, we are

asking for centralization in a court in a circuit where there

has been no ruling one way or the other on this 546(e) safe

harbor.  It is a neutral, level, playing field in that sense.

In contrast, the Defendants are asking this panel to move

the cases to the one circuit, to the one district, where they

believe they can take advantage of this recent Second Circuit

ruling even though Plaintiff --

JUDGE PERRY:  Okay, Counsel.  I believe you've

answered my question.  Thank you.

JUDGE CALDWELL:  Yes.  Judge Huvelle.

JUDGE HUVELLE:  I just wondered whether you've

considered, hypothetically, if Massachusetts' choice of laws

decide that the substantial relationship is New York, you will

not have succeeded.  Do you agree?  Massachusetts could find

that they have to apply Second Circuit law to the substantive

issues.  So I don't see what you've accomplished, actually.

MR. FRIEDMAN:  My understanding, Your Honor, is that

with respect to issues of federal law, this is interpretation

1   of a federal statute, that the federal courts around the country

2   will make their own interpretation of the federal legal issue.

3   In contrast, choice-of-law rules applied by Massachusetts could

4   result in application of the law of different states with

5   respect to state law issues.

6       JUDGE HUVELLE:  Thank you.  And also, do you have an

7   unfavorable statute of limitations in Massachusetts compared

8   to New York?

9       MR. FRIEDMAN:  The statute of limitations issue,

10  Your Honor, is actually very complicated because it relates to

11  the choice-of-law questions that you raise.  We think that under

12  any state's law, either by virtue of the number of years in the

13  statute or by virtue of state-law tolling doctrines, we believe

14  that whatever state's law governs, breach of fiduciary duty

15  claims and fraudulent transfer claims, those claims will be

16  fine.

17      JUDGE CALDWELL:  Thank you.

18   Any other questions for this counsel?

19   Thank you very much, Mr. Friedman.  You'll have a minute

20  reserved for rebuttal.

21   Next we'll hear from Cliff Gardner.  Mr. Gardner?

22  Mr. Gardner, would you make your appearance for the record,

23  please?

24      MR. GARDNER:  Good morning, Your Honors.  This

25  is Cliff Gardner at Skadden Arps.  We represent the former

1    nonmanagement directors of the Jones Group that have been named

2    in these actions.  I'm presenting argument today on behalf

3    of not only those directors but also the former Jones Group

4    officers that have been named.  They're represented by Paul

5    Weiss.

6         Together, these directors and officers agree with

7    Plaintiffs that transfer and centralization is appropriate,

8    but they believe the Southern District of New York is the

9    appropriate transferee court.  So with that introduction,

10   I can turn to my brief remarks.

11             JUDGE CALDWELL:  Very well.  You may make your remarks.

12             MR. GARDNER:  Thank you.

13        First, Your Honors, New York is plainly the center of

14   gravity here.  The Jones Group was a New York-based company.

15   Its offices were in the Garment District in Manhattan.

16   The Jones Group was sold in 2014 to a New York-based private

17   equity firm named Sycamore Partners.  It was then renamed

18   Nine West Holdings, Inc.  Its offices remained in Manhattan.

19   The related actions here arise out of that 2014 transaction.

20   The advisors, financial and legal, the lenders and all of those

21   third parties involved in that 2014 transaction are all based in

22   New York.  We set this forth in our papers.

23        Six lawsuits were filed, prosecuted, and settled in New

24   York State court arising out of that transaction.  Nine West

25   Holdings filed for bankruptcy in the Southern District of New

York.  A number of third parties produced documents in New York in connection with that bankruptcy.

So I think if anyone asks themselves where, in fairness, should these directors and officers face further litigation out of that 2014 transaction in their service to this company, the answer, overwhelmingly, is New York.

Second, there's a chart in our brief at page 11 that I think is helpful.  It's based on publicly available data. It lists the locations of all of the former Jones Group directors and officers, not just those that have been sued. Thirteen of the twenty individuals listed are in New York, New Jersey, Connecticut, or Pennsylvania.  I think quite clearly that illustrates that, in the natural order of things, this litigation would proceed in New York.

As we've set forth in our papers, if the Panel chooses the transferee court based on its traditional factors, location of the evidence and convenience of the witnesses, the Southern District of New York is the clear answer.  I believe the reason there's a debate here about the transferee court is because Plaintiffs selectively picked and chose defendants in a manner designed to create that debate.  Plaintiffs sued in jurisdictions all across this country that have nothing to do with that transaction.

My time is almost up, but I want to point out, you should have no discomfort assigning this case to the Southern District

1   because there's no case there.  Nothing has happened in any of

2   the other cases other than a stay motion.  No one has appeared

3   before any judge; there has been no discovery; there have been

4   no preliminary proceedings.

5       We ask that you look beyond the tactics and consolidate

6   this case in the Southern District of New York, where the

7   witnesses and the evidence are located.  Thank you.

8       JUDGE CALDWELL:  Thank you, Mr. Friedman. [Sic]

9       Questions from the Panel?  Hearing none, we'll proceed

10  with the next argument.  Thank you, Mr. Friedman -- or excuse

11  me.  Mr. Gardner.  Mr. Gardner, I'm so sorry.

12      I will hear from Mr. Weiner.  (Pause.)

13      Mr. Weiner, would you please make your appearance for

14  the record?

15      MR. WEINER:  Sorry about that, Your Honor.

16  Good morning.  It's Gregg Weiner from Ropes & Gray.  I had

17  not unmuted my video.  Apologies for that.

18      JUDGE CALDWELL:  Please enter your appearance.

19      MR. WEINER:  Thank you, Your Honor.  Gregg Weiner

20  from Ropes & Gray, counsel for the Shareholder Defendants.

21  The Shareholder Defendants seek transfer of all the actions

22  to the Southern District of New York.

23      JUDGE CALDWELL:  You may proceed with your argument.

24      MR. WEINER:  Thank you, Your Honor.

25      The only reason we're here today is because the Plaintiffs

1   have engaged in blatant forum-shopping, seeking to avoid

2   controlling Second Circuit precedent.  And the situation here

3   is not merely a case of forum-shopping to avoid bad precedent;

4   instead, Plaintiffs have actually, unnecessarily, split their

5   claims and sought multiplied proceedings and then sought relief

6   from this Panel to transfer to an illogical forum.  The Panel

7   should not reward such behavior which is the antithesis of the

8   statute's requirement that cases be consolidated to promote the

9   just and efficient conduct of the proceedings.

10      And just a few facts that make the forum-shopping

11  here so clear:  The litigation trustee is a New York entity

12  represented by New York counsel, both the trustees in both

13  federal jurisdiction based on the bankruptcy in the Southern

14  District of New York.

15      All of the actions -- and this is crucial -- could have

16  been brought in a single action pursuant to the bankruptcy

17  codes related to jurisdiction and the trustees all sue under

18  New York's debtor-creditor law.  And in order for that law

19  to control, they have to show that New York has the most

20  significant relationship to the parties, the conveyance, and

21  the underlying claim.

22      So what we have is forum-shopping.  The Panel should not

23  reward that.  And, in fact, all of the arguments that are made

24  are the product of that forum-shopping, which really distorts

25  the analysis that would normally occur.  There's no doubt, as

1   Mr. Gardner laid out, the center of gravity here is New York,

2   and that's perfectly clear.

3        Now, in terms of the fact that there's no case pending

4   in New York, the statute is unambiguous.  This Panel has the

5   authority to transfer to any district, and there's no impediment

6   to transfer it to a district where no case is pending.  And as

7   for the supposed reluctance of the Panel to transfer to a

8   district where no case is pending, the cases they cite for that,

9   all are from the 1970s, interestingly, and in all of those cases,

10  they involved development -- it was development of the cases

11  where they were pending, unlike here where the case is in its

12  infancy, as Mr. Gardner said.

13       And, finally, in terms of the numbers, the fact is,

14  the majority of the parties and the damages are not in

15  Massachusetts, and the numbers they cite are rigged.  Fidelity

16  Canada is absolutely Canadian, it's not Massachusetts, and that

17  changes the numbers to more like 24 percent.  And the final

18  point is, here there's not going to be any discovery of the

19  Shareholder Defendants, which makes the numbers even less

20  significant.  Thank you.

21            JUDGE CALDWELL:  Thank you.

22       Judge Kennelly?

23            JUDGE KENNELLY:  Hi, Mr. Weiner.  I had a question

24  about this issue that you mentioned, about all the cases could

25  have been brought in New York under the bankruptcy related to

1    jurisdiction.  Would that have gotten the Plaintiffs around

2    personal jurisdiction issues over the Defendants?  Because what

3    I was getting from Plaintiffs' counsel, at least my sense of it,

4    was that they chose to sue the various groups based on where

5    they resided.

6            MR. WEINER:  Well, absolutely there would be no

7    jurisdictional challenge, because the bankruptcy rules are clear

8    that there's nationwide service of process and jurisdiction in

9    connection with actions brought in -- arising under the

10   Bankruptcy Code, and the Plaintiffs assert affirmatively that

11   their claims arise under the Bankruptcy Code Title 11 and the

12   bankruptcy case that was filed in the Southern District of New

13   York.

14           JUDGE KENNELLY:  Thank you.

15           JUDGE CALDWELL:  Judge Huvelle.

16           JUDGE HUVELLE:  Does it make any difference that

17   that bankruptcy case is over?

18           MR. WEINER:  Well, certainly if the case were

19   pending, that would even be a stronger basis to transfer it

20   to New York.  But the fact is, regardless of whether it's

21   over or not, the reason the case was in New York supports

22   the transfer to New York here.

23       There was a New York party, a New York entity, and

24   extensive discovery was taken by the creditors' committee in

25   the bankruptcy case in New York because all the participants --

1    "all" is an overstatement, but the vast majority of the

2    participants in the LBO transaction that's being challenged

3    are New York-based.

4           JUDGE HUVELLE:  Well, have they, the Plaintiffs,

5    invoked the Bankruptcy Code in the current complaints?

6           MR. WEINER:  Absolutely, Your Honor.  Very explicitly

7    they invoke and expressly allege that their claims arise under

8    Title 11 and are in connection with the bank with the Southern

9    District bankruptcy.  In fact, the only reason those plaintiffs

10   have any authority to bring these claims is from the bankruptcy

11   plan that was approved in the Southern District of New York.

12   The trust was created in the bankruptcy plan.  The trust was

13   given authority to sue by virtue of the bankruptcy plan.

14          JUDGE HUVELLE:  Did the bankruptcy case ever get

15   to the district court judge, or was it always solely with

16   the bankruptcy judge?

17          MR. WEINER:  I'm not aware of any actions beyond

18   the bankruptcy judge, Your Honor.

19          JUDGE HUVELLE:  Based on the Bankruptcy Code, what

20   law would apply?  If that statute applies even in Massachusetts,

21   would it be Second Circuit or First Circuit?

22          MR. WEINER:  Well, the -- there's a number of

23   different causes of action.  Every case invokes New York's

24   debtor-creditor law, so the question is whether New York

25   debtor-creditor law would apply.  The litigation trustee is

1    suing under the Bankruptcy Code, and that's a federal question.

2         JUDGE CALDWELL:  Yes.  Judge Perry.

3         JUDGE PERRY:  So I just want a clarification.  Is your

4    answer to Judge Kennelly's question about personal jurisdiction,

5    and combine it with Judge Huvelle's question, you're saying that

6    there would not have been any personal jurisdiction problem even

7    though the bankruptcy action is closed?

8         MR. WEINER:  That's correct, Your Honor.  There's

9    no doubt that that's how the rule works, because it's connected

10   to the bankruptcy, and that's the basis on which they -- and

11   trustees do that all the time, you know.  So that's a very

12   well-established legal principle.

13        JUDGE CALDWELL:  Does anyone have any further

14   questions for Mr. Weiner?

15        Thank you very much, sir.  That concludes your argument.

16   Mr. Friedman has one minute for rebuttal.

17        Mr. Friedman, we'll hear from you.

18        MR. FRIEDMAN:  Thank you, Your Honor.

19        Contrary to Defendants' argument, Plaintiffs are entitled

20   to decide which defendants to sue and where to sue them,

21   especially when the reasonable decision is made to sue

22   defendants in their home states.

23        The only reason these non-New York defendants are clamoring

24   for transfer to the Southern District of New York and away from

25   their home courts is to obtain the benefit of a recent Second

1    Circuit decision on issues that have not been decided by any

2    other circuit court of appeals.  Potential defendants are simply

3    not a factor in the Panel's analysis.

4         The center of gravity may have been in 2014 in New York,

5    but it is not the center of gravity now.  The documents of the

6    old Jones Group/Nine West are in Texas.  The former directors,

7    most of them are outside of New York.  The officers are all

8    around the country.  The non-party witnesses are all around the

9    country.  The chart that Defendants referred to shows entities

10   and the principal place of business of entities, not who the

11   witnesses are and where they reside.

12        JUDGE CALDWELL:  Thank you very much.

13   Judge Kennelly.

14        JUDGE KENNELLY:  Mr. Friedman, I'd like to get your

15   reaction to Mr. Weiner's response to the questions that I and

16   Judge Huvelle and Judge Perry asked, and specifically you

17   had indicated during your earlier argument that you picked

18   where to sue each of these defendants based on where they lived.

19   Could you, as a matter of personal jurisdiction, have sued them

20   all in New York under the bankruptcy related to --

21        MR. FRIEDMAN:  Yes, Your Honor.

22        JUDGE KENNELLY:  Okay.  Thanks.

23        MR. FRIEDMAN:  We could have.

24        JUDGE KENNELLY:  Okay.  Thank you.

25   Why didn't you, then?

1    MR. FRIEDMAN:  We didn't because we were acting in the

2  best interest of the beneficiaries of the trust, and it seemed

3  unwise to the trustees and to counsel to file suit in the one

4  circuit where there has been an interpretation of federal law

5  that we respectfully disagree with.

6    JUDGE KENNELLY:  So this whole forum-shopping thing

7  turns out to be kind of equal on both sides, sounds like, huh?

8    MR. FRIEDMAN:  Well, I would submit, Your Honor,

9  the difference is that Plaintiffs are entitled to choose their

10  forum.  Defendants generally do not have a right to move cases

11  to the place where they think the law is best for them.

12    JUDGE KENNELLY:  Thanks, Mr. Friedman.

13    JUDGE HUVELLE:  Is it true, Mr. Friedman, that in

14  your complaint you allege that under the Bankruptcy Code that

15  the center of activity was New York?

16    MR. FRIEDMAN:  Not exactly, Your Honor.  What we

17  allege is that the case is related to the bankruptcy.  We also

18  do allege -- and maybe this is directly responsive to your

19  question:  We do allege that, back in 2014, New York is where

20  most of the important events occurred.

21    But, in contrast to a situation where corporate

22  headquarters are in a state and documents and witnesses are

23  at the corporate headquarters, here that corporation is no

24  longer with us, and the documents are not in New York.  The

25  documents are on backup tapes in Texas.  The witnesses are

1   dispersed.

2            JUDGE HUVELLE:  Thank you.

3            JUDGE CALDWELL:  Any further questions for Mr. Friedman?

4        Thank you very much, sir.  That concludes your argument

5   and all arguments in MDL No. 2941.  That also concludes our

6   arguments for the day.  Therefore, the Panel will be in recess

7   pending its deliberations.  Thank you.

8        (Proceedings adjourned at 11:09 a.m.)

\*   \*   \*   \*   \*   \*

CERTIFICATE

I, BRYAN A. WAYNE, Official Court Reporter, certify

that the foregoing pages are a correct transcript from the

record of proceedings in the above-entitled matter.


*Bryan A. Wayne*
BRYAN A. WAYNE